702 A.2d 509

MANSION SUPPLY COMPANY, INC., PLAINTIFF–RESPONDENT/CROSS–APPELLANT, v. ASHOK R. BAPAT AND SHAILA A. BAPAT, DEFENDANTS–APPELLANTS/CROSS–RESPONDENTS, AND PAGE GROUP, INC., DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 28, 1997—Decided November 19, 1997.

314

Before Judges STERN, KLEINER and KIMMELMAN.

*Gary M. Perkiss* argued the cause for appellants/cross-respondents (*Pozzuolo & Perkiss,* attorneys; *Mr. Perkiss,* on the brief).

*Gerald A. Sinclair* argued the cause for respondent/cross-appellant.

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

Defendants Ashok R. Bapat and Shaila A. Bapat appeal from a summary judgment entered December 6, 1996, enforcing against them a lien claim filed by plaintiff Mansion Supply Company, Inc. pursuant to the Construction Lien Law, *N.J.S.A.* 2A:44A–1 to –38.

Defendants had entered into a construction contract with Page Properties, Inc. (Page) to construct a one-family residence on a parcel of land owned by them. During construction, Page ordered windows and other related materials from plaintiff. The last of these materials was delivered to the construction site on May 24, 1995. The total invoice price was $30,810.89. Work on defendants' residence ceased on August 17, 1995, when Page went out of business. On August 21, 1995, eighty-nine days after the last of plaintiff's materials were delivered to the site, plaintiff, in accordance with its understanding of the Construction Lien Law, filed a Notice of Unpaid Balance and Right to File Lien (NUB), a

demand for arbitration, and a form of lien claim, all pursuant to *N.J.S.A.* 2A:44A–6, –20, –21b(1), (3).

The issues on this appeal involve the construction, operation, and effect of the Construction Lien Law as it applies to lien claims affecting residential real estate.

In construing a statute, our function is to first consider its plain language in the context of the entire legislative scheme of which it is a part. *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 127–28, 527 *A.*2d 1368 (1987); *State v. Wright,* 107 *N.J.* 488, 497, 527 *A.*2d 379 (1987). When the statutory language is clear and unambiguous, we will enforce the statute as written, "'absent any specific indication of legislative intent to the contrary.'" *Chase Manhattan Bank v. Josephson,* 135 *N.J.* 209, 225, 638 *A.*2d 1301 (1994) (quoting *Town of Morristown v. Woman's Club,* 124 *N.J.* 605, 592 *A.*2d 216 (1991)) (emphasis deleted); *State v. Bigham,* 119 *N.J.* 646, 650–51, 575 *A.*2d 868 (1990).

Initially, we recognize that the Construction Lien Law was enacted, and became effective, on April 22, 1994. It replaced the long-standing Mechanics' Lien Law, *N.J.S.A.* 2A:44–64 to –124 (repealed, L.1993, c. 318). Under the Mechanics' Lien Law, a supplier of labor and/or materials, as a condition precedent to the establishment of a lien claim, was obliged to file a mechanic's notice of intention prior to the performance of labor or the furnishing of materials, irrespective of whether the construction project was commercial or residential. *N.J.S.A.* 2A:44–71 (repealed); *Apex Roofing Supply Co. v. Howell,* 59 *N.J.Super.* 462, 467–68, 158 *A.*2d 49 (App.Div.1960); *Belmont Coal & Lumber Co. v. James F. Wood Builders,* 125 *N.J.L.* 315, 316, 15 *A.*2d 625 (Sup.Ct.1940). Thereafter, the unpaid supplier of labor and/or materials was obliged to commence an action to enforce the lien within four months from the date that the last labor was performed or materials were furnished. *See N.J.S.A.* 2A:44–98 (repealed). In the absence of a settlement between the parties, litigation to enforce a lien on residential real estate could be rather protracted, because the validity of the encumbrance created

by the filing of the mechanic's notice of intention remained in doubt until a conclusion was reached.

The Construction Lien Law (hereafter, the "Act"), eliminated in all instances the requirement that a contractor planning to supply labor and materials must prefile a notice of intention before a lien could attach to the property involved. This prefiling process had a tendency to create distrust and friction between contractors and owners. Robert S. Peckar, et al., New Jersey Institute for Continuing Legal Education, *New Jersey's Lien Laws: A Second Look*, 6 (1997). In the case of residential construction contracts (as defined in the Act), the Legislature intended the provisions of the Act to provide for an expeditious determination of an owner's liability for lien claims. In the text of the Act, the Legislature asserted its finding that the ability to sell and purchase residential housing is essential for the economy of the State, and that such ability would be enhanced by treating contractors and suppliers of construction materials for residential real estate projects differently from contractors and suppliers involved in commercial projects. *N.J.S.A.* 2A:44A–21a. Accordingly, the Legislature established separate provisions concerning the placement of liens on residential real estate. The expressed intent was to establish a uniform system for the resolution of lien claims affecting residential real estate without delay and uncertainty. *N.J.S.A.* 2A:44A–21a.

Under the Act, an unpaid supplier of work, services, material, or equipment (hereafter "material" or "materials") is obliged to file a lien claim "with the county clerk not later than 90 days following the date the last ... material ... was provided for which payment is claimed." (Sometimes hereafter, "the ninety-day window.") *N.J.S.A.* 2A:44A–6. Specific to this case, *N.J.S.A.* 2A:44A–6 further provides that:

No lien shall attach, or be enforceable under the provisions of this act and, in the case of a residential construction contract, compliance with sections 20 and 21 of this act, unless the lien claim is filed ... within the time provided by this section....

■ Although not worded with the utmost clarity, we discern the plain meaning of *N.J.S.A.* 2A:44A–6 to be that:

1.  All lien claims must be filed within ninety days after the last material was furnished; and

2.  In the instance of residential construction contracts, the lien claimant must also comply with sections 20 and 21 of the Act.

*N.J.S.A.* 2A:44A–20a prescribes the form of a Notice of Unpaid Balance and Right to File Lien (NUB), in which the claimant must give notice of a "potential construction lien." The claimant must also represent and verify that the NUB has been filed within ninety days from the last date upon which materials were provided.

■ While a NUB must always be filed when a potential lien claim affects residential real estate, a NUB may also be filed when other types of property are involved and a potential lien claimant desires to seek priority over subsequently filed conveyances, leases, or mortgages affecting the real property to which improvements have been made. In non-residential cases, a NUB constitutes appropriate notice on the record of the claimant's desire for priority. Nonetheless, *N.J.S.A.* 2A:44A–20e provides that the filing of a NUB "shall not constitute the filing of a lien claim ... nor does it extend the time for the filing of a lien claim in accordance with the provisions of this act."

It is explicitly mandated by *N.J.S.A.* 2A:44A–21b(1) that:

[A]s a condition precedent to the filing of a lien arising under a residential real estate contract, a lien claimant shall first file a [NUB] in accordance with the provisions of subsection a. of section 20 of this act, and comply with all other provisions of this section.

Other provisions governing residential lien claims require that:

[S]imultaneously with the service ... [of the NUB,] the lien claimant shall also serve a demand for arbitration and fulfill all the requirements and procedures of the American Arbitration Association to institute an *expedited* proceeding before a single arbitrator designated by the American Arbitration Association.

[*N.J.S.A.* 2A:44A–21b(3) (Emphasis added).]

The arbitrator appointed in accordance with the above section is obligated to hold an expedited hearing and to determine, within thirty days, the validity and amount of any lien claim which has been filed pursuant to the NUB. *N.J.S.A.* 2A:44A–21b(4) and (6). By agreement of the parties, an alternative dispute mechanism may be used.[1] *N.J.S.A.* 2A:44A–21b(3). In the event of a determination, either by way of arbitration or by an alternative dispute mechanism, that there is an amount pursuant to which a valid lien may attach, the residential lien claimant shall, within ten days of the receipt of such determination, "file such lien claim." Otherwise, the lien claim shall be invalid. *N.J.S.A.* 2A:44A–21b(8).

We discern no intendment by the Legislature that the ninety-day window within which a lien claim may be filed should be extended when residential real estate is involved. As indicated, *N.J.S.A.* 2A:44A–20e makes it clear that the filing of a NUB does not extend the time for the filing of a lien claim. All conditions precedent to the filing of a lien claim on a residential project, as prescribed by *N.J.S.A.* 2A:44A–21b(1), must be satisfied in a sufficient time to comply with the ninety-day window set by *N.J.S.A.* 2A:44A–6. Significantly, *N.J.S.A.* 2A:44A–5 requires that, where a residential construction contract is involved, "strict compliance with sections 20 and 21" must be had.

Finally, any claimant who has filed a lien claim within the ninety-day window must bring an action to enforce it in the Superior Court within one year after the date of the last provision of material for which payment is sought; or within thirty days if the owner demands commencement of an action to enforce a lien claim. *N.J.S.A.* 2A:44A–14a(1), (2).

In this case, as indicated, plaintiff filed a NUB, a demand for arbitration, and a lien claim document eighty-nine days after the last delivery of materials. The parties then proceeded to arbitration, in accordance with *N.J.S.A.* 2A:44A–21b(3). The arbitrator concluded that:

---

[1] Complementary Dispute Resolution Programs are authorized by *R.* 1:40.

> [T]he filing of the [NUB,] as stipulated by section 20(e) of the Construction Lien Law, does not constitute ... the filing of a lien claim nor does it extend the time the lien claim can be filed.

He held:

> [T]he time period in which to file a Lien Claim, pursuant to [*N.J.S.A.* 2A:44A–6] has expired.... Claimant's lien claim is therefore deemed to be invalid and shall be discharged.

The arbitrator's decision was rendered September 26, 1995, a date which was within the thirty days permitted for his determination, but which was more than ninety days after the last furnishing of materials to the residential site in question. In the arbitrator's view, any determination made by him in favor of plaintiff could not result in a lien claim filed within the ninety-day window.

Plaintiff moved to vacate the order of the arbitrator. The trial court granted plaintiff's motion, and filed a written opinion reported under the caption *Mansion Supply Co., Inc. v. Bapat,* 293 *N.J.Super.* 253, 679 *A.*2d 1249 (Law Div.1996). The trial court reasoned that the Act creates an extended time frame for the filing of liens with respect to residential construction contracts. The judge concluded that, while liens generally must be filed within the ninety-day window established in *N.J.S.A.* 2A:44A–6, "the legislative intent ... expressly stated in the statute" allows up to 130 days within which to complete the lien claim process in the case of residential construction contracts. The court's calculation was made as follows: ninety days within which to file a NUB and demand for arbitration, thirty days within which the arbitrator must act, and ten days within which the lien claim, as determined by the arbitration process, must be filed.

The matter was then remanded to arbitration by the trial court and, on reconsideration, the arbitrator held that plaintiff did have a valid claim for the full amount. Within ten days thereafter, plaintiff filed a lien claim for $30,810.89. On plaintiff's application to enforce its lien claim, the trial court awarded summary judgment in favor of plaintiff. Defendants' cross-motions for summary judgment and for court costs and attorney's fees were denied.

We respectfully disagree with the trial court's interpretation of the Act. We observe that the Legislature perceived a need to provide a statutory system to enhance the collection of money for materials provided for the construction of residential housing and a corresponding need to stabilize the marketplace by reducing "undue delay and uncertainty" in the acquisition and financing of residential housing by families. *See N.J.S.A.* 2A:44A–21a. Mindful of these needs, the Legislature directed that the time period for the establishment of all lien claims be limited to ninety days. The Legislature authorized the filing of a lien claim in cases involving non-residential properties without requiring additional procedures by way of claim resolution, but when a residential property is involved, arbitration or an alternative dispute mechanism, is mandatory. Nowhere in the Act is the ninety-day window extended under any circumstance. Consequently, we determine that the Legislature intended that the arbitration, or the alternative dispute mechanism, be completed in time for the lien claim to be filed within the ninety-day window. *See N.J.S.A.* 2A:44A–5, –6, –21b(6). It therefore behooves a residential lien claimant to file both a NUB and a demand for arbitration sufficiently in advance of the expiration of the ninety-day window to allow a final determination to be made by the arbitrator, or by means of the alternative dispute mechanism, before that deadline expires.

A recent New Jersey Institute For Continuing Legal Education publication succinctly distills the legislative intent as follows:

> Due to the arbitration requirement for residential construction, the 30 day period for an arbitrator to make its determination and the 10 day period to conform to it, the NUB for residential construction should be filed not later than 50 days following completion of the work. Otherwise, there may not be adequate time to file a lien.

> [Peckar, *supra*, at 27.]

Accordingly, we conclude that the trial court's interpretation of the Act contravenes its plain language and the clearly expressed legislative intent. The initial decision of the arbitrator, that plaintiff's lien claim was improperly filed, was correct. The trial court's reversal of the arbitrator and subsequent remand, as

reported at 293 *N.J.Super.* 253, 679 *A.*2d 1249 (Law Div.1996), was in error. The Law Division order entered December 6, 1996, granting summary judgment to enforce the lien claim plaintiff filed after the arbitrator's decision on remand, must also be reversed. It was not proper for the case to have proceeded to that point.

In view of our determination that the judgment below be reversed, we are constrained to address defendants' request that they be awarded court costs and reasonable legal expenses, including attorney's fees. Both *N.J.S.A.* 2A:44A–15a and *N.J.S.A.* 2A:44A–21b(12) set forth the circumstances under which such an award may be made. Without expressing an opinion as to the merits, we leave such claim to be addressed on remand.

In sum, the interlocutory order, which is the subject of the opinion reported at 293 *N.J.Super.* 253, 679 *A.*2d 1249, is reversed. The summary judgment entered December 6, 1996, is reversed. This matter is remanded to the Law Division for consideration of defendants' request for costs, expenses, and attorney's fees. We do not retain jurisdiction. Our decision renders moot plaintiff's cross-appeal.